# Fish & Richardson p.c.

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

17ᵀᴴ Floor
222 Delaware Avenue
p.o. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

October 15, 2009

The Honorable Sue L. Robinson
United States District Court
844 North King Street
Lock Box 31
Wilmington, DE 19801

Re:   *Eurand, Inc., et al. v. Mylan Pharmaceuticals Inc. et al.*,
       C.A. No. 08-889-SLR; *Eurand, Inc., et al. v. Impax Laboratories Inc.*,
       C.A. No. 09-18-SLR



ATLANTA
AUSTIN
BOSTON
DALLAS
DELAWARE
HOUSTON
MUNICH
NEW YORK
SAN DIEGO
SILICON VALLEY
TWIN CITIES
WASHINGTON, DC

Dear Judge Robinson:

During the discovery conference on Tuesday, the Court indicated it would entertain short letters from the parties regarding Mylan's request for discovery concerning drugs not at issue in this litigation. (10/13/09 Hr'g Tr. 45:2-7.) At the conference, Mylan focused on three arguments, none of which support its request for "other drug" discovery.

First, Mylan argued that Eurand's private, confidential documents concerning other drug formulations might contain evidence regarding the "inherent" properties of those formulations, and that such information could be relevant to its obviousness defense. That is legally incorrect, as explained in Plaintiffs' October 9 letter. (D.I. 101).

Mylan's argument is based on its hypothesis that formulations of other drugs marketed under the Diffucaps® trademark, such as methylphenidate, could "inherently" possess the cyclobenzaprine release profile of independent claim 1 of the '793 patent. Mylan argues that Eurand should produce confidential, non-prior-art laboratory notebooks and other materials regarding methylphenidate, as well as other drug formulations, because they *might* contain data showing those formulations inherently possess the specific release profile in the '793 patent when tested using the apparatus and reaction conditions claimed in that patent. This argument is not grounded in law or fact.

Unlike inherent <u>anticipation</u>, which was at issue in the *Schering* case Mylan cites, a so-called inherent feature of the prior art may only be relied upon to establish <u>obviousness</u> if the inherency would have been obvious to one of ordinary skill in the art at the time the invention was made. *Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1576 (Fed. Cir. 1986) ("Inherency and obviousness are different concepts."), overruled on other grounds by *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004); *see also* 2 Donald A. Chisum, *Chisum on Patents* § 5.03[3][a][i][A]. Confidential, non-prior-art

Fish & Richardson p.c.

October 15, 2009
Page 2

test results concerning the methylphenidate formulations disclosed in the '215 patent (or any other formulation) are thus irrelevant to the question of obviousness. *See, e.g., Life Technologies, Inc. v. Clontech Laboratories, Inc.*, 224 F.3d 1320, 1325 (Fed. Cir. 2000). The two cases cited by Mylan at the discovery conference do not contradict this principle. *See In re Napier*, 55 F.3d 610 (Fed. Cir. 1995); *In re Grasselli*, 713 F.3d 731 (Fed. Cir. 1983).

Furthermore, claim 1 of the '793 patent is limited to extended-release dosage forms of **cyclobenzaprine** that, among other things, display a specific release profile when tested in 0.1 N hydrochloric acid using a particular apparatus. Mylan's obviousness allegations, by contrast, primarily relate to the publicly-available '215 patent (attached as Exhibit A), which discloses a number of different drug release profiles for **methylphenidate** formulations. For this reason, Mylan's "inherency" argument cannot support its request for discovery of confidential methylphenidate development documents, or for similar discovery regarding drugs other than cyclobenzaprine.

Second, Mylan's inequitable conduct allegation (which is limited to methylphenidate) does not provide a basis for the discovery Mylan seeks. Mylan argues that discovery concerning formulations of other drugs, including amitriptyline and propranolol, might turn up evidence to support its inequitable conduct defense. But Mylan's inequitable conduct defense is based solely upon its allegation that a named inventor on the '793 patent failed to disclose the '215 patent – a public document – to the Patent Office. Documents concerning the research and development of methylphenidate formulations, not to mention the unrelated drugs amitriptyline and propranolol, are irrelevant to that defense.

Finally, Mylan argues that confidential, non-prior-art documents concerning unrelated drugs are relevant to the secondary considerations of "failure of others" and "prior unsolved need," but it has pointed to no authority for that proposition. Mylan's suggestion that such documents might show that work leading to the '793 patent was not "difficult" for the Eurand inventors is beside the point. (D.I. 101 at 2.) The question of obviousness is judged not from the standpoint of the inventors, but from the standpoint of a person of ordinary skill in the art. 35 U.S.C. § 103; *Life Technologies*, 224 F.3d at 1325. Moreover, Plaintiffs have produced all documents concerning the development of the cyclobenzaprine formulations claimed in the '793 patent. To the extent that any cyclobenzaprine development materials reference other drugs, Plaintiffs have already produced those materials.

Respectfully submitted,

/s/ William J. Marsden, Jr.

William J. Marsden, Jr.
Enclosure
cc:   Richard L. Horwitz, Esq.
      Mary B. Matterer, Esq.
      John C. Phillips, Esq.