Potter
Anderson
& Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984-6000

www.potteranderson.com

Richard L. Horwitz
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027 Direct Phone
302 658-1192 Fax

October 15, 2009

**VIA HAND DELIVERY**

The Honorable Sue L. Robinson
J. Caleb Boggs Federal Building
844 N. King Street
Room 6124 - Unit 31
Wilmington, DE 19801-3568

Re: *Eurand, et al. v. Mylan, et al.*, C.A. Nos. 08-889 and 09-018
<u>Mylan's Supplemental Submission Regarding Diffucaps® Documents</u>

Dear Judge Robinson:

     Mylan submits this letter pursuant to the Court's October 13 offer to consider supplemental briefing. As explained below, discovery as to the limited areas requested is very relevant to current issues in the case. To further narrow the focus of the discovery sought, Mylan is willing to limit its present requests to: (1) development progress reports and documents concerning the compositions of and testing relating to the two properties claimed in the '793 patent, for two prior art Diffucaps products -- methylphenidate and amitriptyline; and (2) with respect to other Diffucaps formulations, Mylan requests only that the Court direct Plaintiffs to answer an interrogatory describing the composition of each such dosage form that has been commercialized prior to the '793 patent's priority date and its release profile as tested in accordance with the method recited in the '793 patent.

I.    **The Inherent Characteristics of Prior Art Products May Be Shown By Internal Data Or Other Non-Prior Art Documents And Are Relevant**

     The asserted claims are directed to compositions that exhibit certain characteristics when tested. *See, e.g.*, Claim 1 ("a . . . dosage form . . . wherein said dosage form when dissolution tested . . . exhibits a drug release profile substantially corresponding to the following pattern: . . . ."); Claim 3 ("wherein said . . . dosage form . . . provides a maximum blood plasma concentration . . . within [certain ranges]."). These inherent characteristics of the dosage form may be established through non-prior art information including internal test data. For example, in the '215 prior art patent, Plaintiffs opted to disclose a dissolution test using water, as opposed to a dissolution test using HCl. If Plaintiffs have testing of that prior art formulation in HCl, it can prove the claimed property was inherent in the prior art – just like in the *Schering* case where the District Court properly relied on secret preclinical study data predating the anticipating reference as establishing the inherent result of administering the prior art compound. *See Schering Corp. v. Geneva Pharms, Inc.*, 275 F.Supp.2d 534, 536 (D.N.J. 2002), *affirmed* 339 F.2d 1373, 1380 (Fed. Cir. 2003). The inherent property in the prior art reference need <u>not</u> be recognized by the skilled artisan (*Schering*, 339 F.3d at 1377) and is relevant to both anticipation and obviousness. *In re Napier*, 55 F.3d 610 (Fed. Cir. 1995). The same applies for blood plasma concentrations of the two prior art products at issue. The documents sought

(development/progress reports, and other documents relating to the properties at issue) are reasonably tailored to capture this relevant information. In addition, Plaintiffs should be held to their representation in the September 15 hearing that non-confidential documents relating to these formulations have not been withheld.

There is no dispute that the Diffucaps platform has been used as a vehicle for various prior art extended-release formulations using both methylphenidate and amitriptyline, among others. The methylphenidate Diffucaps formulation is the subject of Eurand's '215 patent which discloses formulations that are very similar in structure those of the '793 patent. Mylan has also asserted references disclosing the amitriptyline Diffucaps formulation as prior art against the '793 patent. *See, e.g.,* Exhibit A. The amitriptyline compound is <u>almost identical</u> in structure to cyclobenzaprine and exhibits some of the same properties. *See* Exhibit B. There is thus a direct nexus between these Diffucaps formulations, including their inherent properties, to the cyclobenzaprine formulations claimed in the '793 patent. Indeed, this Court and the Federal Circuit have recognized the close similarities between the amitriptyline and cyclobenzaprine compounds in finding inequitable conduct for failure to disclose amitriptyline to the PTO. *See Merck & Co. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418 (Fed. Cir. 1989). Documents within plaintiffs' possession, custody and control concerning these compositions and their properties are relevant to Mylan's invalidity and inequitable conduct defenses.

## II. Plaintiffs' Vague Interrogatory Responses on Secondary Considerations Should Not Prevent Mylan From Obtaining Needed Discovery

Plaintiffs' supplemental interrogatory responses remain limited to generalized recitations of secondary factors that might be raised, some of which evince an intent to assert that the '793 formulation was difficult to develop even in view of the prior art asserted by Mylan. This case presents a situation where the asserted patent claims a formulation that is an extension of a pre-existing, prior art product and there is thus a nexus between the claimed formulation and other, similar, products using the same basic platform. At the October 15 hearing, the Court suggested it might be amenable to requiring Plaintiffs to come forward with more specific contentions on secondary considerations so that discovery by Defendants could be tailored to the actual contentions. Tr. at 30-31. Plaintiffs should not be permitted to foreclose timely fact discovery of rebuttal evidence by failing to disclose such contentions with specificity. Mylan requests the Court to require prompt and specific disclosure of any evidence upon which Plaintiffs may rely concerning alleged difficulty, unmet need, or unexpected results of the claimed formulation. If failure to disclose such contentions prevents Mylan from obtaining timely discovery of rebuttal facts, Plaintiffs should be precluded from offering such contentions at trial.

## III. The Named Inventors' Knowledge of Asserted Prior Art Formulations That Were Not Disclosed To The PTO Is Relevant To Inequitable Conduct

Mylan seeks documents to, from, or generated by the two named inventors of the '793 patent relating to amitriptyline and to, from or generated by inventor Clevenger relating to methylphenidate. Both inventors had a duty to disclose any material information in their possession concerning these Diffucaps formulations. Plaintiffs have come forward with no specific basis for a claim that such discovery would pose substantial burdens, and this information is solely within the control of Plaintiffs. Accordingly, it should be produced.

Respectfully Submitted,

*/s/ Richard L. Horwitz*

Richard L. Horwitz

RLH/nmt/937879/33695

cc: Clerk of the Court (Via Hand Delivery)
Counsel of Record (Via Electronic Mail)