IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EURAND, INC., CEPHALON, INC. and ANESTA AG, | ) ) ) |
| Plaintiffs, | ) ) C.A. No. 08-889-SLR-MPT ) |
| v. | ) ) |
| | ) **PUBLIC VERSION** |
| MYLAN PHARMACEUTICALS INC., MYLAN INC., and BARR LABORATORIES, INC., | ) ) ) ) |
| Defendants. | ) ) |

LETTER TO THE HONORABLE MARY PAT THYNGE
FROM RICHARD L. HORWITZ

cc: Clerk of the Court (Via Hand Delivery)
    Counsel of Record (Via Electronic Mail)

Dated: March 1, 2010
Public Version Dated: March 8, 2010
956112/33695

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market St., 6th Floor
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants Mylan Inc.
and Mylan Pharmaceuticals Inc.*



**Potter Anderson & Corroon LLP**

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984-6000

www.potteranderson.com

Richard L. Horwitz
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027 Direct Phone
302 658-1192 Fax

March 1, 2010
Public Version Dated: March 8, 2010

**VIA ELECTRONIC FILING**

**PUBLIC VERSION**

The Honorable Mary Pat Thynge
J. Caleb Boggs Federal Building
844 N. King Street
Room 2124 – Unit 8
Wilmington, DE 19801-3568

Re:   *Eurand Inc. et al. v. Mylan Inc. et al.*, C.A. No. 08-889-SLR-MPT

Dear Magistrate Judge Thynge:

Defendants Mylan Inc. and Mylan Pharmaceuticals Inc. (collectively "Mylan") respectfully request the Court's assistance in obtaining discovery from Plaintiff Eurand, Inc. ("Eurand") from the files of the two inventors of the patent-in-suit ("the '793 patent") on the issue of inequitable conduct. The discovery Mylan seeks is a narrow follow-up to earlier discovery and is limited to documents evidencing the two inventors' awareness and understanding of certain public prior art that was not submitted to the PTO during a defined period of time (*i.e.*, the prior to and during their filing and prosecution of the '793 patent).[1]

During the prosecution of the '793 patent, the inventors and their attorneys failed to disclose to the PTO prior art showing the same extended-release ("ER") technology they claimed as novel in the '793 patent. Mylan has found other prior art that also was not disclosed. Mylan seeks discovery of what the inventors knew and were saying about such prior art during the '793 patent prosecution. Such evidence will contradict assertions that such nondisclosure was innocent oversight and rebut claims that the undisclosed art was immaterial (claims that Plaintiffs are currently making in this action). The requested discovery is therefore relevant to both the materiality and intent elements of inequitable conduct.

**I.   The Discovery Sought Relates to Mylan's Inequitable Conduct Claim**

Inequitable conduct occurs when an individual with a duty to disclose material prior art to the PTO fails to disclose such prior art and does so with an intent to deceive the PTO. *See, e.g., Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988). Inventors are amongst those with such a duty. 37 C.F.R. 1.56(c)(1). Thus the knowledge and understanding of undisclosed prior art is relevant to the inventors' subjective intent, including knowledge of the reference and its materiality. *See, e.g., FMC Corp. v. Manitowoc Co.*, 835

---

[1] The requested discovery is directed to public prior art and thus differs from Mylan's earlier request, which was directed to "confidential lab notebooks and other research and development documents" and "non-prior art data." *See* December 9, 2009 Order (D.I. 116) at 1, 9.

The Honorable Mary Pat Thynge
March 1, 2010
Page 2

F.2d 1411, 1415 (Fed. Cir. 1987). While the requisite intent may be proved with circumstantial evidence, documents in the inventors' exclusive possession provides direct evidence of the inventors' state of mind.[2]

Mylan's amended answer alleges that the failure to disclose U.S. Patent No. 6,344,215 ("the '215 patent) to the PTO constitutes inequitable conduct. The '215 patent identifies as an inventor one of the two inventors of the '793 patent and, like the '793 patent, was assigned to Eurand. The '215 patent discloses a formulation with methylphenidate as the active ingredient made using Eurand Diffucaps® technology. It consists of capsules filled with drug coated sugar spheres that are further coated with a seal coat and then a water insoluble polymer membrane, just as claimed in the '793 patent. The '215 patent discloses the same ingredients and manufacturing process to obtain the same release profile claimed in the '793 patent. Nevertheless, although every other Eurand patent issued to the two inventors of the '793 patent was disclosed to the PTO, the '215 patent was not. The PTO recently rejected claims in a pending continuation of the '793 patent as obvious over the '215 patent and another undisclosed reference teaching an ER formulation of cyclobenzaprine ("the Razaghi reference"). In addition, Mylan recently found other prior art that was not submitted to the PTO involving ER formulations of amitriptyline. At least one prior art amitriptyline ER formulation (Redomex) has been sold under the Diffucaps® trademark.

Mylan seeks fact discovery of the inventors' knowledge and understanding of this undisclosed prior art. Plaintiffs refuse to provide this discovery <u>while at the same time contending in their interrogatory responses that there is no evidence of intent to deceive and that in any event undisclosed prior art is not material</u>. Documents uniquely in the possession of the inventors will, however, provide direct evidence of knowledge and intent and rebut any claim that withheld prior art was immaterial, by showing the inventors' awareness and understanding of the prior art when the '793 patent was filed and prosecuted. Moreover, should the inventors claim no memory of undisclosed prior art, as is often the case, the requested documents may help refresh their recollection. In short, Plaintiffs should not be allowed to withhold documents in their possession and then turn around and assert an absence of evidence of materiality and intent. Specifically, Mylan requests production of the following documents:[3]

- Documents (including emails) in the inventors' files "referring to, discussing, or constituting prior art to the '793 patent . . . that disclose extended release products utilizing methylphenidate amitriptyline," specifically including the '215 patent. ." See RFP No. 123.

- Documents (including emails) in the inventor files "referring to, discussing, or constituting prior art to the '793 patent . . . that disclose extended release products utilizing . . . cyclobenzaprine," specifically including the prior art Razaghi reference. See RFP No. 124.

---

[2] If Plaintiffs contend discovery as to any reference other than the '215 patent is foreclosed because Mylan has not yet pled the withholding of such references, this Court and others have recognized that the pleading particularity requirement requires discovery before pleading. *See, e.g., Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp.2d 484, 487-90 (D. Del. 2003); *Ormco Corp. v. Align Tech., Inc.*, 2008 WL 4501805 at *10 (C.D. Cal. Oct. 3, 2008).

[3] The specific requests at issue (RFP Nos. 115, 123 and 124) are attached hereto as Enclosure 1.

The Honorable Mary Pat Thynge
March 1, 2010
Page 3

- Documents (including emails) in the inventor files "referring or relating to any OROS®, or other osmotic pump, formulation of methylphenidate or cyclobenzaprine." *See* RFP No. 115.[4]

Statements by the inventors about the '215 patent and other prior art methylphenidate ER formulations, their properties, and their potential applicability for use with other active ingredients is evidence of the inventors' intent and would contradict any denial of materiality based on alleged unique properties of methylphenidate. Similarly, the inventors' awareness of and statements about the osmotic pump ER technology disclosed in the Razaghi reference and the prior art OROS® osmotic dosage forms for methylphenidate and cyclobenzaprine is evidence of state of mind as to material undisclosed prior art. In his earlier '215 patent which was withheld from the PTO, '793 inventor Gopi Venkatesh specifically suggested that the '215 formulation should be used in lieu of the more expensive osmotic pump technology such as OROS®. The inventors' knowledge and understanding that this prior art technology was used for both methylphenidate and cyclobenzaprine is relevant to whether they understood that methylphenidate and cyclobenzaprine could be delivered using similar technologies and nevertheless chose to withhold the '215 patent from the PTO. Finally, the inventors' knowledge and understanding of published prior art ER dosage forms of the nearly identical amitriptyline molecule, which were not submitted to the PTO, is relevant to the inventors' knowledge, intent to withhold, and recognition of the materiality of these references.

## II.   Mylan's Discovery Requests Are Reasonable And Appropriate

Mylan seeks documents relating to the inventors' state of mind as to <u>public prior art</u> that was not disclosed to the PTO, an element of inequitable conduct. They do not, as Plaintiffs contend, involve the types of documents of concern in this Court's December 9, 2009 Order, *i.e.*, "confidential lab notebooks and other research and development documents." *Id.* at 1. *See also id.* at 9 ("non-prior art data"). Mylan does not seek Eurand development documents but rather seeks inventor documents that "refer to, discuss, or constitute" prior art. Such documents could be retrieved without undue burden through targeted searches and were not, as Plaintiffs contend, captured by previous searches for the term "cyclobenzaprine." The inventors' awareness and understanding of the prior art at issue cannot be suppressed simply because the term cyclobenzaprine does not appear in the same document. Indeed, it is conceivable that there are many documents in the inventors' files pertaining to the relevant prior art during the pertinent time frame – including the prior art references themselves – that do not explicitly mention cyclobenzaprine. Further, given Mylan's offer to limit its requests to the files of two individuals, there is no basis to limit searches to cyclobenzaprine on burden grounds.

Respectfully,

/s/ *Richard L. Horwitz*

Richard L. Horwitz

Enclosure
cc:   Clerk of the Court (via Hand Delivery)
      Counsel of Record (via efiling and electronic mail)

---

[4] As a compromise, Mylan offered to limit this request to documents (including email) in the files of the inventors that were generated prior to the filing date of the '793 patent.