# FISH & RICHARDSON P.C.

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

17ᵀᴴ FLOOR
222 DELAWARE AVENUE
P.O. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

William J. Marsden, Jr.
302 778-8401

Email
marsden@fr.com

**VIA ELECTRONIC FILING**

March 2, 2010

The Honorable Mary Pat Thynge
United States District Court
  for the District of Delaware
844 N. King Street
Wilmington, DE 19801

Re:   *Eurand Inc., e al. v. Mylan Inc., et al.*
       D. Del. - C.A. No. 08-889-SLR-MPT



ATLANTA
BOSTON
DALLAS
DELAWARE
HOUSTON
MUNICH
NEW YORK
SILICON VALLEY
SOUTHERN CALIFORNIA
TWIN CITIES
WASHINGTON, DC

Dear Magistrate Judge Thynge:

We write in response to Defendants Mylan Inc. and Mylan Pharmaceuticals Inc.'s (collectively, "Mylan's") March 1, 2010 letter regarding a discovery dispute with Plaintiff Eurand, Inc. ("Eurand"). Mylan improperly seeks internal, confidential "[d]ocuments (including e-mails) in the inventors' files referring to, discussing, or constituting prior art to the '793 patent…that disclose extended release products utilizing methylphenidate [or] amitriptyline." *See* D.I. 141 at 2. This is an attempted "end run" around the Court's prior Order in December rejecting the very same discovery. *See* D.I. 116 (denying Mylan's request for documents to, from, or by the two named inventors of the '793 patent relating to amitriptyline or methylphenidate).

Eurand has already conducted a comprehensive search of the files of relevant custodians, including the named inventors, for documents relating in any way to the patents-in-suit or the relevant drug, cyclobenzaprine. In producing the documents it found from this search, Eurand did not withhold any documents because they discussed other drugs (including methylphenidate or amitriptyline), or any piece of prior art, public or otherwise. Eurand also searched for, and produced, all responsive, non-privileged documents relating to the prosecution of the '793 patent, including documents referring to or discussing prior art. Thus, Eurand has already provided any discovery bearing on cyclobenzaprine, and any possible prior art Mylan could raise, to the extent such material is relevant and discoverable.

Mylan, nonetheless, again seeks discovery wholly unrelated to AMRIX®, cyclobenzaprine, or the patents-in suit. Mylan previously briefed and argued this very same request in three letter briefs and two separate hearings during September and October of last year. *See* D.I. 101, 103, 104, 142, and 143. During the September 15, 2009 hearing, Mylan's counsel admitted that Mylan was doing no more than "fishing around" for new prior art through its request for methylphenidate and amitriptyline-related information. *See* D.I. 142 at 33.

The Court has already considered, and denied, Mylan's request for this information. *See* D.I. 116. In particular, the Court specifically **denied** Mylan's request for "confidential

FISH & RICHARDSON P.C.

The Honorable Mary Pat Thynge
March 2, 2010
Page 2

lab notebooks and other research and development documents," as well as for **"documents to, from or generated by the two named inventors of the '793 patent" relating to amitriptyline or methylphenidate.** *Id.* The Court rejected these requests over Mylan's argument that the information sought might be relevant to its inequitable conduct defense. *Id.* (finding that "the inequitable conduct defense raised by Mylan, failure to disclose the '215 patent, relies on **publicly available information**." (emphasis added)).

Mylan now asks for the same discovery that it was previously denied, albeit through repackaged requests.[1] Mylan argues that its new requests are directed to "public prior art" and thus allegedly differ from the earlier requests.[2] But Mylan's requests are not limited to actual public prior art, which Eurand has already produced to the extent it exists in the relevant files. Instead, Mylan's broad requests for information "referring to" or "discussing" any such reference, specified or not, encompass precisely the same internal, confidential material that the Court previously ruled it may not discover.

Nor can Mylan justify its latest requests by relying upon its inequitable conduct claim, which was previously considered and rejected by the Court as a basis for obtaining this information. Under Fed. R. Civ. P. 9(b), Mylan must plead the elements of its inequitable conduct claim with particularity. As this Court recognized in its prior ruling (which is law of the case), the purpose of the heightened pleading requirement is to "deter the filing of charges of fraud as a pretext for discovery of unknown wrongs." D.I. 116, *citing Stowe Woodward L.L.C. v. Sensor Prods., Inc.*, 230 F.R.D. 463, 466 (W.D. Va. 2005). Mylan only pled inequitable conduct with respect to the '215 patent, D.I. 141 at 2, but it is again requesting discovery regarding completely separate topics such as a "Razaghi" reference, an "OROS®" drug delivery technology, and amitriptyline-related materials. These items form part of Mylan's invalidity allegations. Documents concerning those allegations are irrelevant to Mylan's inequitable conduct defense, and Mylan should not be allowed to "fish around" in Eurand's non-cyclobenzaprine related files for such materials. The Court has already specifically rejected Mylan's prior request for such materials. The only difference here is that Mylan has omitted any reference to the true issue – its invalidity allegations – in this latest round of briefing.[3]

---

[1] Mylan has also sought the discovery of information covered by the Court's Order through a subpoena to Thompson Hine LLP, the firm that prosecuted the '215 patent and began the prosecution of the '793 patent. D.I. 13, C.A. No. 2009-md-2118. Mylan did not notify Thompson Hine of the Court's Order denying its request for methylphenidate-related documents. *See* Ex. 1.

[2] Mylan itself has had difficulty articulating exactly what discovery it seeks through its broad requests. Mylan, for instance, initially told Eurand that it only sought "prior art printed publications and other *non-confidential documents*." *See* Ex. 2 (emphasis added).

[3] Mylan's argument that it should not be foreclosed from discovery regarding other references because of the pleading with particularity requirement is not supported by the cases it cites, and is also directly contradicted by this Court's prior Order (which Mylan does not cite).

FISH & RICHARDSON P.C.

The Honorable Mary Pat Thynge
March 2, 2010
Page 3

Nor do Mylan's "do-over" requests seek information even theoretically relevant to its inequitable conduct claim for the '215 patent. As a matter of law, Mylan's requests cannot lead to evidence relevant to the materiality prong of its inequitable conduct claim because that determination is objective, not subjective. *See Life Techs., Inc. v. Clontech Labs., Inc.*, 224 F.3d 1320, 1325 (Fed. Cir. 2000) ("Information is material where there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent.").

Courts have likewise denied broad discovery requests of the type at issue here seeking alleged evidence of intent to deceive. *Eisai Co., Ltd. v. Teva Pharms. USA, Inc.*, C.A. No. 05-5727 (GEB), 2009 WL 4666937, at *4 (D.N.J. Dec. 8, 2009). In *Eisai*, the court denied a defendant's request for discovery regarding the plaintiff's co-pending patent applications. *Id.* at *3-*4. The defendant in that case asserted that the plaintiff committed inequitable conduct by failing to disclose a co-pending application to the Patent Office, and argued that documents relating to other co-pending patent applications were relevant to "assess whether the withholding of the [] application at issue here was done with…deceptive intent." *Id.* at *3. In denying the defendant's request, the court accepted the plaintiff's representation that it had searched for documents relating to the co-pending application in connection with the prosecution of the patent-in-suit. *Id.* at 4. The Court found that the additional discovery requested by defendants was therefore unwarranted, and that it could lead to "the unwelcome distraction of an extended fishing expedition resulting in a virtual side-trial on prior co-pending applications relevant only to intent." *Id.* at 4.

Mylan, like the defendant in *Eisai*, is <u>admittedly</u> undertaking a fishing expedition regarding one of Eurand's other patents in the hopes that it will uncover evidence to support its allegation of intent. In fact, Mylan's requests are even further afield than those in *Eisai*. Unlike *Eisai*, which concerned a co-pending application, the '215 patent issued well before the application that led to the '793 patent had even been filed. The lack of temporal overlap between the two patents further confirms that Mylan's requests do not seek relevant information under the Federal Rules of Civil Procedure, and that its "end run" around the Court's prior order should be rejected.

Respectfully submitted,

/s/ *William J. Marsden, Jr.*

William J. Marsden, Jr.
WJM/kxk
Enclosures
cc:    Counsel of Record (via electronic mail)